UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OWN CAPITAL, L.L.C., a California limited
liability company,

        Plaintiff,

v.

        Case Number: 11-12772

        HON. MARIANNE O. BATTANI

JOHNNY'S ENTERPRISES, INC., a South
Carolina corporation, and
JOHN C. DANGERFIELD, an individual,

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE
ARBITRATION AWARD AND GRANTING PLAINTIFF'S MOTION TO CONFIRM**

Before the Court is Plaintiff OWN Capital LLC's Amended Motion for Confirmation of Arbitration Award (Doc. 26) and Defendants Johnny's Enterprises Inc. and John Dangerfield's Amended Motion to Vacate Order Confirming Arbitrator's Award and Other Relief or, Alternatively, Motion to Vacate, Modify and/or Correct Arbitration Award (Doc. 31). Plaintiff filed a motion to confirm a $4,034,711.00 arbitration award against Defendants. Defendants argue the Court should vacate or modify the award because Plaintiff failed to follow contractual requirements relating to the arbitration process, the arbitrator manifested "evident partiality" against Defendants, and the underlying loan agreement charged a usurious rate of interest. For the reasons that follow, the Court **DENIES** Defendants' motion and **GRANTS** Plaintiff's motion.

**I.      STATEMENT OF FACTS**

      **A.      Arbitration Background**

On October 8, 2008, Defendant Johnny's Enterprises, Inc. entered into a Promissory Note with Orbach Waters LLC (Plaintiff OWN Capital LLC's predecessor in interest) in exchange for an unsecured cash loan of $2,976,500. (Doc. 26 Ex. 3). On the same day, Defendant John Dangerfield executed a Personal Guaranty on that Note. (Doc. 26 Ex. 4).

The Note provides that Defendant Johnny's Enterprises would make forty-eight monthly payments of $93,845. Each monthly payment consists of principal, basic interest on the unpaid balance (accruing at the rate of 6.25% per annum, compounded monthly), and $23,600 of "contingent interest." The Note also states that if the loan charges exceed limits set by the applicable law, Plaintiff would reduce the loan charges to the amount permitted and return any overages.

The Note specifies that "[t]he exclusive jurisdiction and venue of any legal action instituted by any party to this note shall be pursuant to [the arbitration clause] of this note." (Doc. 26 Ex. 3 at § 17). Under the Guaranty, Defendant Dangerfield agreed to be subject to "all terms and conditions" set forth in the arbitration clause of the Note. (Doc. 26 Ex. 4 at § 12). California law governs both the Note and the Guaranty. (Id. at §11; Doc. 26 Ex. 3 at § 17).

The arbitration clause provides (in relevant part):

> **Arbitration**. To the extent allowed by applicable law, any Claim . . . shall be resolved by binding arbitration in accordance with . . . the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association (the "Arbitration Rules") then in effect . . . .

> **Selection of Arbitrator**. Within seven (7) days after written notice of arbitration has been served, the Lender and Borrower shall select one arbitrator mutually agreeable to them. However, if they are unable to do so, the Lender shall have the exclusive right within fifteen (15) working days, to submit names and qualifications of five (5) potential arbitrators. The Lender and Borrow shall pick one of these five (5) persons to be the arbitrator pursuant to the following procedure:
>
>> a) The Lender and Borrower shall each have the right to strike or reject two (2) names submitted by the Lender.
>>
>> b) The party requesting arbitration shall strike the first name and the other party, the second. This process will be repeated and the remaining person shall be the arbitrator.
>
> All costs, expenses, and fees of the arbitrator shall be shared equally by the parties.
>
> **Qualifications of the Arbitrator**. No one who has any personal or financial interest in the outcome or result of the arbitration shall serve as a neutral arbitrator. . . . Prior to accepting appointment, the prospective arbitrator shall disclose any facts or circumstances likely to create a presumption of bias or prejudice or the lack of requisite training and experience. Upon receipt of such information, the Lender shall submit five (5) new names and repeat the selection process until a neutral qualified person is selected to arbitrate the dispute.

(Doc. 26 Ex. 3 at § 20).

On April 1, 2010, after Defendant Johnny's Enterprises defaulted under the Note, Plaintiff sent Defendants a notice of its election to arbitrate.  (Doc. 26 Ex. 5 at 2 of 10). Defendants did not respond.

On April 9, Plaintiff sent Defendants an additional notice that included a list of five arbitrators that Defendants could consider for the forthcoming arbitration.  (Id. at 3 of 10).

On April 16, Defendants' South Carolina counsel, Justin Lucey, responded to the above letters by advising Plaintiff's counsel that Defendants objected to the nature of

3

Plaintiff's notices, claiming that they did not comply with the rules of the American Arbitration Association ("AAA").  (Doc. 31 Ex. 3).

On April 27, Plaintiff sent another notice to Defendants indicating that it unilaterally selected Robert Anderson of the Dawda Mann law firm as the arbitrator due to their failure to participate in the selection process.  (Doc. 26 Ex. 5 at 6 of 10).  Anderson twice notified Defendants of the arbitration proceeding.  (Id. at 7-9 of 10).  Defendants did not respond to Anderson's letter, nor did they participate in any of the scheduled arbitration proceedings.

On August 17, because of Defendants' non-participation, Anderson issued an Arbitration Award ("Award") in favor of Plaintiff and against Defendants, jointly and severally, for $4,034,711.00, "together with statutory interest to accrue from July 30, 2010, and costs and attorney fees in the amount of $6,295.50," adding that Plaintiff "shall also be awarded reimbursement for all amounts paid to the Arbitrator."  (Doc. 26 Ex. 6).

### B.    Additional Background

In mid-October 2010, Plaintiff's counsel (Lawrence Stawiarski and Earl Johnson) left the McDonald Hopkins law firm and joined Dawda Mann, bringing Plaintiff with them as a client.  As discussed above, Dawda Mann is the law firm where Robert Anderson practices.

Plaintiff has filed at least nine other motions to confirm arbitration awards in the Eastern District of Michigan.  (Doc. 31 Ex. 4). The issues in the cases are generally the same: Plaintiff seeks to confirm an arbitration award after alleged defaults on notes and guaranties by car dealerships and their respective owners.  In addition to this case, Plaintiff appointed Anderson to serve as the arbitrator in five other matters.  (Id. at Ex. 5-9)  After Anderson accepting appointment in three of those five (Id. at Ex. 5-7), he informed Dawda

Mann to disqualify him from serving in the remaining two due to a conflict of interest. (Id. at Ex. 8-9). Plaintiff obtained favorable awards in all three of the matters in which Anderson sat as the arbitrator. (Id. Ex. 5-7).

### C. Procedural History

Plaintiff began the instant federal court action by filing a Motion for Confirmation of Arbitrator's Award on August 24, 2010. (Doc. 1). On September 1, the Court entered an Order Confirming Arbitrator's Award. (Doc. 2).

On September 28, Defendants filed three motions: (1) Motion to Dismiss for Lack of Subject-Matter and Personal Jurisdiction and Other Relief (Doc. 7); (2) Motion to Vacate Order Confirming Arbitrator's Award to Correct Clerical Mistake and/or Mistake Arising From Oversight and Other Relief (Doc. 8), and (3) Motion to Vacate Order Confirming Arbitrator's Award and Other Relief (Doc. 9).

On September 30, after recognizing it had made a clerical error when entering the Confirmation Order, the Court *sua sponte* entered an Order Vacating Order Granting Arbitration Award. (Doc. 11).

On October 21, instead of filing responses to all three of Defendants' motions, Plaintiff filed a Withdrawal of Motion for Confirmation of Arbitration Award. (Doc. 14). The Court granted that motion the next day. (Docket Sheet, Text-Only Order Dated 10/22/10). Shortly after Plaintiff withdrew its original motion, Defendants' filed a Motion for Costs and Attorney Fees. (Doc. 15).

On November 17, the Court heard oral argument on Defendants' then pending motions. At the hearing, the Court dismissed Defendants' Motion to Vacate Order Confirming Arbitrator's Award to Correct Clerical Mistake and/or Mistake Arising From

Oversight or Omission and Other Relief as moot, ordered Plaintiff to respond to Defendants' Motion to Dismiss for Lack of Subject-Matter and Personal Jurisdiction and Other Relief, and informed the parties that it will issue a written opinion on Defendants' Motion for Costs and Attorney Fees.  (Doc. 20).

After the hearing, Plaintiff filed a timely Response to Defendants' Motion to Dismiss. (Doc. 22).  Defendants filed a Reply to Plaintiff's Response to Defendants' Motion for Costs and Fees two days after the deadline to file that Reply had passed.  (Doc. 21).  Seizing upon the late filing, Plaintiff filed a Motion to Strike Defendants' Reply and For An Award of Attorney Fees and Costs (Doc. 23).

On February 1, 2011, Plaintiff filed an Amended Motion for Confirmation of Arbitration Award ("Motion to Confirm").  (Doc. 26).

On February 10, the Court found Defendant's then pending Motion to Dismiss for Lack of Subject-Matter and Personal Jurisdiction and Other Relief and Motion to Vacate Order Confirming Arbitrator's Award and Other Relief moot because the motions addressed a motion that was no longer pending before the Court.  (Doc. 28).[1]  The next day, the Court denied the parties' cross-motions for fees and Plaintiff's motion to strike.  (Doc. 29).

On February 24, Defendant filed an Amended Motion to Vacate Order Confirming Arbitrator's Award And Other Relief Or, Alternatively, Motion To Vacate, Modify And/Or Correct Arbitration Award ("Motion to Vacate").  (Doc. 31).

---

[1] The Court subsequently denied Defendants' motion for reconsideration of this Order.  (Doc. 34)

6

Two motions remain pending on the Court's docket: Plaintiff's Motion to Confirm (Doc. 26) and Defendants' Motion to Vacate (Doc. 31). Both motions are now before the Court.

## II.     STANDARD OF REVIEW

As a general rule, the Federal Arbitration Act ("FAA") presumes that arbitration awards will be confirmed, and "courts should play only a limited role in reviewing the decisions of arbitrators." Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000) (quotations omitted). "When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." Nationwide Mut. Ins. Co. v. Home Ins. Co. ("Nationwide IV"), 429 F.3d 640, 643 (6th Cir. 2005) (quotations omitted). Accordingly, a "federal court may vacate an arbitration award only in very limited circumstances." Id. Those circumstances include "(1) where the award was procured by fraud, (2) where the arbitrators were evidently partial or corrupt, (3) where the arbitrators misbehaved so that a party's rights were prejudiced, or (4) where the arbitrators exceeded their powers or executed them so that a final, definite award was not made." Dawahare, 210 F.3d at 669 (citing 9 U.S.C. § 10(a)). In the Sixth Circuit, a reviewing court may also vacate an award where the arbitrators have "manifestly disregarded the law." Id. (citing Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 135 (6th Cir. 1996)).

The FAA also provides for the modification or correction of an award:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

### III. ANALYSIS

Defendants' argue the Court should vacate or modify the Award for three reasons. First, they contend the arbitrator exceeded his powers under 9 U.S.C. § 10(a)(4) because Plaintiff did not follow the applicable contractual procedures for selecting a qualified arbitrator. Second, they claim the arbitrator was evidently partial on behalf on Plaintiff under 9 U.S.C. § 10(a)(2). Finally, Defendants maintain the Award is impermissibly based on a usurious Note.

#### A. Arbitrator Selection Process

Defendants' contend the arbitrator had no jurisdiction to issue the Award, thereby exceeding his powers under 9 U.S.C. § 10(a)(4), because the parties did not appoint the arbitrator pursuant to the selection process outlined in the Note. Building their argument around 9 U.S.C. § 5 which provides "if in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed," Defendants essentially argue that since Plaintiff did not follow the contractual procedures, the arbitrator has no authority under the contract, and thus, no jurisdiction. Plaintiff does not dispute that it did not follow certain contractual procedures. Rather, it argues Defendants' have waived their arguments presented here because they did not object on these grounds during the arbitration. The Court agrees with Plaintiff.

"A party may waive its objection to the jurisdiction of the arbitrators by acquiescing in the arbitration with knowledge of the possible defect." Nationwide Mut. Ins. Co. v. Home Ins. Co. ("Nationwide III"), 330 F.3d 843, 846 (6th Cir. 2003) (citations omitted); see also AFL-CIO v. U.S. Postal Serv., 751 F.2d 834, 841 n.4 (6th Cir. 1985) (explaining a party who fails to object promptly to procedural errors made during an arbitration waives the right to later assert those errors); Armco Employees Independent Federation, Inc. v. AK Steel Corp., 149 F.App'x 347, 352 (6th Cir. 2005) ("Generally, arguments not presented to an arbitrator are deemed waived and cannot be raised for the first time in an enforcement action in a district court."). Since Plaintiff is claiming waiver, it bears the burden of proof on this issue. Nationwide III, 330 F.3d at 846 (citation omitted). Under California law, a party waives a contractual right by "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Sanchez v. Cnty. of San Bernadino, 98 Cal.Rptr.3d 96, 106 (Cal. Ct. App. 2009) (quotations omitted).

Defendants' waived their right to challenge the process by which the arbitrator was selected or contest the arbitrator's jurisdiction because they failed to object during the arbitration. The record shows that Plaintiff obtained the Award by default. Defendants' only participation in the entire process was a letter sent to Plaintiff on April 16 which contained their opinion that Plaintiff's April 1 and April 9 letters "do[ ] not appear to be in compliance with the rules of the [AAA], which [are] referenced in the alleged arbitration agreement." (Doc. 31 Ex. 3). However, the arbitration clause states "[i]f the terms of this note and the [AAA] Rules are inconsistent, the terms of this note shall control." (Doc. 26 Ex. 3 at § 20). Since the arbitration initiation procedure of the Note conflicted the with AAA rules, Plaintiff followed the initiation procedure as set forth in the Note.

9

Subsequent to the April 16 letter, Defendants did nothing in response to any of the communications related to the arbitration. On April 27, Plaintiff informed Defendants that it had unilaterally selected an arbitrator. (Doc. 26 Ex. 5 at 6 of 10). The Court notes Plaintiff has no right to unilaterally select an arbitrator under the terms of the arbitrator selection clause. However, Defendants did not object to Plaintiff's selection, they were silent. Defendants remained silent in response to all communications from the arbitrator. They did not participate in the June 14 telephone conference with the arbitrator and Plaintiff, did not submit arbitration briefs, and failed to attend the July 30 arbitration hearing. (Id. at 7 of 10).

Defendants' vague and singular objection relating to the initiation of the process was insufficient to halt the arbitration. They allowed the arbitration to proceed without objecting to Plaintiff's unilateral selection. Defendants' failure to respond induces a reasonable belief that they had no objection to the arbitration. Sanchez, 98 Cal.Rptr.3d at 106; see also Brook v. Peak Intern., Ltd., 294 F.3d 668, 674 (5th Cir. 2002) ("The failure to file a clear written objection to a defect in the selection process constitutes waiver." citing Health Services Management Corp. v. Hughes, 975 F.2d 1253, 1263-64 (7th Cir. 1992)). The Court agrees with Plaintiff that if the deviation from the contractual procedures were as fundamentally unfair as Defendants' now suggest, they could have sought an order from a district court compelling arbitration before a properly selected arbitrator pursuant to sections 4 and 5 of the FAA. They did not. Because of their nearly complete inaction, Defendants have waived their ability to challenge the selection process or the arbitrator's jurisdiction in this forum. Nationwide III, 330 F.3d at 846; U.S. Postal Serv., 751 F.2d at 841 n.4; see also Brook, 294 F.3d at 674 ("It is well settled that a party may not sit idle

10

through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse." quoting Marino v. Writers Guild of America, East, Inc., 992 F.2d 1480, 1484 (9th Cir.1993)).

### B. Arbitrator Qualifications

Defendants also argue the arbitrator exceeded powers because Plaintiff selected him in violation of the arbitrator qualifications clause. The qualifications clause states "[n]o one who has any personal or financial interest in the outcome or result of the arbitration shall serve as a neutral arbitrator. . . . Prior to accepting appointment, the prospective arbitrator shall disclose any facts or circumstances likely to create a presumption of bias or prejudice or the lack of requisite training and experience" (Doc. 26 Ex. 3 at § 20).

While this action was pending, Defendants discovered that sometime in October 2010 Plaintiff and its counsel left McDonald Hopkins and joined Dawda Mann, the firm where the arbitrator practices. They claim that the arbitrator impermissibly obtained an personal or financial interest in the Award because Plaintiff's counsel and client are now with his firm. Defendants speculate that Plaintiff's counsel were in talks to switch firms during the pendency of the arbitration. Defendants also learned that Plaintiff appointed Anderson as the arbitrator in five other matters, and he disqualified himself in two of those five for "conflict of interest" reasons. They maintain the arbitrator's nondisclosure of these facts violates the qualifications clause. Defendants also suggest the alleged mid-arbitration talks between Plaintiff's counsel and Dawda Mann created the conflict which caused the disqualifications.

The post-arbitration developments provide no basis for vacatur or modification. The arbitrator did not acquire a financial or personal interest in the outcome of the arbitration

merely because Plaintiff and its counsel joined the arbitrator's firm three months after he issued the Award. Plaintiff collects the Award, not the arbitrator or his firm. Similarly, the attorney fees ordered in the Award accrue to McDonald Hopkins, not the arbitrator or his firm. Defendants' accusation that Plaintiff's counsel were in talks with the arbitrator's firm during the arbitration is pure speculation and has no evidentiary support. Defendants have not shown how the arbitrator has a specific personal or financial interest in the outcome of the Award.

Relatedly, the arbitrator's nondisclosures carry no consequence under the qualifications clause. The arbitrator accepted Plaintiff's appointment on May 19, 2010. (Doc. 26 at 7 of 10). Prior to this acceptance, the time at which the arbitrator had a duty to disclose, Plaintiff appointed him to serve in three other cases. (Doc. 31 Ex. 5-7). The failure to disclose the other appointments does not create a presumption of bias, nor does it provide a basis to retroactively disqualify the arbitrator. Nationwide IV, 429 F.3d at 647 ("[T]o disqualify any arbitrator who had professional dealings with one of the parties [to say nothing of a social acquaintanceship] would make it impossible, in some circumstances, to find a qualified arbitrator at all." quotations omitted). Contrary to Defendants' conjecture, the record does not establish that the arbitrator's subsequent disqualifications had anything to do with Plaintiff's counsel joining his firm. Plaintiff explained at oral argument that Anderson disqualified himself in the two matters because he had already accepted a total four appointments from Plaintiff. Moreover, the arbitrator had no contractual duty to disclose these disqualifications because they occurred *subsequent* to his appointment in this case. Defendants' arguments under the qualification clause provide no grounds for vacatur or modification.

**C.      Evident Partiality**

Defendants claim vacatur is warranted under 10 U.S.C. §10(a)(2) because the arbitrator was evidently partial on behalf of Plaintiff. A court does "not rush to conclude that an arbitrator is evidently partial." Uhl v. Komatsu Forklift Co., 512 F.3d 294, 308 (6th Cir. 2008). To demonstrate "evident partiality" in the Sixth Circuit, "the challenging party must show that a reasonable person would have to conclude that an arbitrator was partial to the other party or the arbitration." Uhl, 512 F.3d at 306 (quoting Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1358 (6th Cir.1989)). "[T]he party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator." Id. (quoting The Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 329 (6th Cir.1998). "It is not enough to demonstrate an amorphous institutional predisposition toward the other side, because that would simply be the appearance-of-bias standard that we have previously rejected." Id. at 306-07. Although actual bias need not be demonstrated, apparent bias is not enough to vacate the arbitrator's award. Id. at 306; Andersons, 166 F.3d at 329. Additionally, a court should not vacate an award "when arbitrators fail to disclose insubstantial relationships." Uhl, 512 F.3d at 306 (quotation omitted).

Defendants have failed to establish specific facts that indicate the arbitrator had improper motives. "The alleged partiality must be direct, definite, and capable of demonstration." Nationwide IV, 429 F.3d at 645 (quoting Andersons, 166 F.3d at 329). They offer no evidence which shows that the arbitrator reached an agreement with Plaintiff to render favorable awards in exchange for more appointments or fees, or that the arbitrator had a substantial business relationship with Plaintiff prior to the events here. Instead, they rely on the arbitrator's nondisclosures, his issuance of Plaintiff favorable

13

awards in separate cases, his disqualification in other matters, and the temporal proximity between the Award and Plaintiff's counsel joining Dawda Mann. A reasonable person would not "have to" conclude the arbitrator was partial under these circumstances. Uhl, 512 F.3d at 306.

An arbitrator's involvement in multiple cases does not necessarily create a relationship worthy of disclosure because seasoned arbitrators are repeatedly employed precisely because of their experience. See Nationwide IV, 429 F.3d at 645-46 & n. 8; Id. at 308. Although Plaintiff received favorable awards in other cases, it does not follow that the awards were obtained through arbitrator bias. It is more probable that the law and facts favored Plaintiff's position. The conjecture that flows from the temporal proximity of Plaintiff's counsel joining Dawda Mann is unsubstantiated; there is no evidence of any mid-arbitration employment discussions. As for Defendants' accusation that the disqualifications that were prompted by these alleged discussions, the arbitrator disqualified himself after accepting appointments in three additional cases, not because of employment negotiations.

Furthermore, Defendants' failure to take part in the arbitration process severely undermines their evident partiality claim. This is not a case where the arbitrator was presented with complex issues and simply agreed with Plaintiff due to his alleged "improper motives." Defendants did not participate in the arbitration at all. The arbitrator simply entered an award based on Defendants' default-something all arbitrators in his circumstances would have done. Given the objective standards governing "evident partiality" claims in the Sixth Circuit, the Court finds no basis to vacate or modify the Award.

**D.     Usury**

Defendants ask the Court to vacate the Award because the arbitrator manifestly disregarded California usury law.  The Sixth Circuit has repeatedly emphasized that a review for manifest disregard of the law is a very narrow and it does not open the door to extensive examination of arbitral awards. Dawahare, 210 F.3d at 669 (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 420 (6th Cir. 1995).  "[T]o find manifest disregard a court must find two things: the relevant law must be clearly defined and the arbitrator must have consciously chosen not to apply it.  Id. (citing M & C Corp. v. Erwin Behr GmbH & Co., 87 F.3d 844, 851 n. 3 (6th Cir. 1996)).   Since arbitrators are not required to explain their decisions, if they chose not to do so, "it is all but impossible to determine whether they acted with manifest disregard for the law."  Id. (citing Jaros, 70 F.3d at 421).  "Only where no judge or group of judges could conceivably come to the same determination as the arbitrators must the award be set aside."  Jaros, 70 F.3d at 421 (citations omitted).  Additionally, the manifest disregard theory authorizes a Court to vacate an arbitration award, not to modify it. Grain v. Trinity Health, Mercy Health Servs. Inc., 551 F.3d 374, 380 (6th Cir. 2008).

Defendants' have failed to present any evidence to show that the arbitrator manifestly disregarded the applicable usury law.  Once again, Defendants' failure to attend the arbitration substantially affects their ability to collaterally attack the Award.  They did not raise the usury issue during the arbitration.  There is no record from which the Court can discover whether the arbitrator consciously chose to disregard California usury law.  The Court will not presume he did.  Jaros, 70 F.3d at 421 ("If a court can find any line of argument that is legally plausible and supports the award then it must be confirmed.").

15

Notably, even if the Court were to find that the arbitrator misapplied the law, vacatur remains improper because "[a] mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." Jaros, 70 F.3d at 421; see also Wachovia Secs., Inc. v. Gangale, 125 F.App'x 671, 677 (6th Cir. 2005) (explaining that the manifest disregard theory does not authorize the courts to reconsider the merits of an award, even if the award rests on factual errors or contract misinterpretation). The Court cannot say that the Award is the result of the arbitrator's refusal to "heed" the applicable legal principles. See Nationwide III, 330 F.3d at 847 (citing Dawahare, 210 F.3d at 669). Moreover, there is no basis for modification under 9 U.S.C. § 11. Defendants do not specify which subsection of § 11 provides the authority to modify the Award, nor do they explain how the Award should be modified. Accordingly, neither vacatur nor modification is permissible.[2]

### IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Vacate (Doc. 31) and **GRANTS** Plaintiff Motion to Confirm (Doc. 26).

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Dated: June 28, 2011

---

[2] At oral argument, the parties discussed potential modifications to the Award based on the usury issue. For the reasons just discussed, the Court has no authority to modify the Award. The parties are free, however, to negotiate a private agreement concerning the satisfaction of the Award.

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Case Manager
